

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 2, 2020

**BY ECF**

The Honorable Vernon S. Broderick
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States v. Carlton Vanier*, S1 18 Cr. 873 (VSB)

Dear Judge Broderick:

    The Government submits this letter in advance of the sentencing of Carlton Vanier ("Vanier" or the "defendant") in the above-referenced matter, currently scheduled for October 9, 2020 at 11:00 a.m.  Vanier trafficked a 15-year-old minor victim and conspired, and ultimately did, traffic a second minor victim, who was approximately 12 or 13 years old.  Vanier used extreme force against these minor victims, on one occasion striking one victim so hard as to dislodge her braces.  The defendant treated these very young women as his property, forcing them to engage in prostitution so that he could profit from it, and he caused them irreversible trauma.  Because of the nature of his conduct and the exceptional vulnerability and harm caused to his minor victims, the Government submits that a sentence within the Guidelines Range of 360 months to life is necessary and appropriate.

**A.  Background**

    On December 11, 2018, a Grand Jury sitting in the Southern District of New York returned an indictment, 18 Cr. 873 (VSB), charging Carlton Vanier and his co-defendant, Ruben Morciglio ("Morciglio"), in six counts relating to their sex trafficking of minors (ECF No. 1, the "Indictment").  Specifically, Count One charged Vanier with conspiring to traffic minor girls for sex, including at least one minor victim who was, at various points, a resident of a treatment facility for troubled youth ("Facility-1"), in violation of Title 18, United States Code, Section 1594(c).  Counts Three and Five charged Vanier with two substantive counts of sex trafficking of a minor and by force, threats of force, fraud, and coercion.  On December 12, 2018, Vanier was arrested and the Indictment unsealed.  Vanier has been detained since that date.

    On December 16, 2019, the defended pled guilty, pursuant to a plea agreement with the Government (the "Plea Agreement"), to one count of sex trafficking of a minor and one count of participating in a sex trafficking conspiracy, as charged in a superseding information, S1 18 Cr. 873 (VSB) (ECF No. 30, the "Superseding Information").  The Superseding Information charged Vanier (i) in Count One, with sex trafficking a then 15 year-old minor victim ("Minor Victim-1"), in violation of Title 18, United States Code, Sections 1591(a), (b)(2), and 2; and (ii) in Count Two,

participating in a sex trafficking conspiracy, including by using force, threats of force, fraud, or coercion, relating to a minor victim who was then approximately 12 or 13 years old ("Minor Victim-2"), in violation of Title 18, United States Code, Section 1594(c).[1]

The parties stipulated in the Plea Agreement that 360 months to life imprisonment, with a mandatory minimum term of 120 months' imprisonment, was the applicable Guidelines range (the "Stipulated Guidelines Range"). In the Final Presentence Report, dated March 10, 2020 (the "PSR"), the United States Probation Office ("Probation") recommended a sentence of 360 months' imprisonment.

**B. Offense Conduct**

As set forth in the PSR, the defendant violently sex trafficked two minor victims, Minor Victim-1 and Minor Victim-2 (together, the "Victims"). The defendant trafficked Minor Victim-2 in or about 2010 or 2011, when Minor Victim-2 was approximately 12 or 13 years old. The defendant "purchased" Minor Victim-2 from another pimp—he paid money to have Minor Victim-2 under his control. He then brought Minor Victim-2 to his home in the Bronx, New York, made Minor Victim-2 "choose up" (meaning select the defendant as Minor Victim-2's pimp), forced Minor Victim-2 to have sex with him, and then advertised Minor Victim-2 online for commercial sex. Minor Victim-2 engaged in commercial sex acts on the defendant's behalf and saw customers "non-stop" for a two-day period while Minor Victim-2 worked for the defendant. During that time, the defendant provided Minor Victim-2 with controlled substances, including Molly, Ecstasy, Xanax, and marijuana, and used force with Minor Victim-2, including by hitting her. The defendant kept approximately half of the proceeds from Minor Victim-2's sex acts. (*See* PSR ¶ 12).

Unfortunately, that was not the end of the defendant's trafficking of Minor Victim-2. Several years later, in approximately the fall of 2018, Minor Victim-2, by then an adult, again encountered the defendant while Minor Victim-2 was engaging in commercial sex acts on behalf of Morciglio. The defendant forced Minor Victim-2 to leave with him. The defendant picked up where he had left off several years earlier, advertising Minor Victim-2 for commercial sex acts—$60 for a "short stay," $80 for half an hour, $150 for an hour, and $250 for two hours. Apparently, that did not provide enough of a profit margin for the defendant: he chopped off Minor Victim-2's hair so that he would no longer have to pay for Minor Victim-2 to get her hair done regularly. During this time period, Minor Victim-2 gave all the money she earned from prostitution to the defendant, which, on a "good" night, was approximately $2,000. (*See* PSR ¶ 12).

The defendant also used extreme violence in furtherance of his sex trafficking of Minor Victim-2. The defendant and Morciglio forced Minor Victim-2 to read books about pimping, listen to pimp-related music, and watch pimp-related YouTube videos. When Minor Victim-2 told the defendant he was forcing her to "learn" about things she knew already, he punched her in the neck. He also threatened certain of Minor Victim-2's family members, writing, in reference to an

---

[1] The references to victims in this submission correspond to those in the Superseding Information and PSR. Minor Victim-1 was identified as Victim-2 in the Indictment. The conduct relating to Minor Victim-2 was contemplated by Count One of the Indictment, relating to sex trafficking conspiracy, but Minor Victim-2 was not identified specifically in the Indictment.

apparent missing person poster depicting Victim-2, among other things, "u will never see [Minor Victim-2] again" and "u might wanna change the lock to your house[.]"  (*See* PSR ¶ 14; *see also* Ex. A[2]).

The defendant's exploitation of vulnerable children and his use of violence was not limited to Minor Victim-2.  Beginning in 2016 or 2017, Minor Victim-1, then approximately 15 years old and living in the foster care system, began engaging in commercial sex acts for Morciglio.  Subsequently, Minor Victim-1 began working for the defendant.  The defendant advertised Minor Victim-1 online for commercial sex services on Backpage.com, a website used to advertise women and girls for prostitution until it was taken down by the Federal Bureau of Investigation in or about the spring of 2018.  The defendant set the prices for Minor Victim-1's commercial sex.  (*See* PSR ¶ 11).  The defendant did not just profit off Minor Victim-1's body—he branded her as his property.  He marked her as his territory.  He had her get a tattoo of his nickname—"Lucky"—on her face, above her eyebrow, to send a constant message to her and anyone she encountered: she was under his control.  (*See* Ex. B).  Minor Victim-2 also witnessed the defendant use serious and repeated violence with Minor Victim-1.  Minor Victim-2 saw the defendant strike Minor Victim-1 over the head with a liquor bottle and refuse to allow Minor Victim-1 to go to the hospital because she was underage; punch Minor Victim-1 in the face, knocking the brackets out of Minor Victim-1's braces; and "pull" a firearm on Minor Victim-1.  (*See* PSR ¶ 14).

Beyond the offense conduct summary set forth in the PSR, pursuant to judicially-authorized search warrants, the Government also searched and seized certain materials from certain of the defendant's electronic devices and his Facebook account.  Those materials plainly show that the defendant's exploitative conduct with Minor Victim-1 and Minor Victim-2 was not an aberration.  It continued up until at least November 2018, shortly before the defendant's arrest the following month.  Text messages that read, to provide just a few examples, "How long you looking for," "60 baby," "Are you affiliated with any law," "How long you looking for baby incalls," "U can come to me for 70 for the half," and "Everything with condom."  These make plain that the defendant was engaged in operating a commercial sex business, arranging in calls, charging by the half hour, and, of course, ensuring he was not unwittingly dealing with law enforcement.  (SDNY_000987).  In other words, the defendant continued his pattern of exploitation up until his arrest, and it seems evident he would have continued doing so.

### C. Probation's Recommendation and the Defendant's Submission

Probation calculated that the defendant has a total offense level of 39 and is in criminal history category of IV, resulting in a guidelines range of 360 months' to life imprisonment.  (PSR at 25).  Probation recommends a sentence of 360 months' imprisonment, which is within the Stipulated Guidelines Range.  (*Id.* at 25-28).  Probation supports its recommendation with the following assessment of the defendant's conduct:

> Vanier's criminal conduct has become increasingly violent and prior lenient sentences have not served as a deterrent.  Vanier viewed the victims as property and as a business

---

[2] The Government is requesting that Exhibits A and B, because they contain personal and/or identifying information about victims who were minors at the time of the offense conduct, be filed under seal.

Case 1:18-cr-00873-VSB   Document 58   Filed 10/02/20   Page 4 of 8

Page 4 of 8

transaction while ignoring that they are human beings. He also used severe physical violence and threats of violence against the victims. The damage to the victims caused by Vanier cannot be undone and warrants a significant punishment.

(*Id.*) Accordingly, Probation finds that "[w]hen considering the factors noted above and the need to address deterrence, just punishment, respect for the law, and protection of the community, we respectfully recommend and believe that a sentence of 360 months' imprisonment is sufficient but not greater than necessary." (*Id.*)

The defendant's submission declines to make a specific request for a particular sentence; rather, the defense submission "attempt[s] to present the Court with a path forward for [the defendant]." (Def. Mem. at 1).

### D. Applicable Law

As the Court is aware, the Sentencing Guidelines provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After that calculation, however, Your Honor must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6.

### E. Discussion

The Government respectfully submits that the seriousness of the offense, the need to promote respect for the law, ensure just punishment, protect the public, and afford adequate deterrence, all warrant imposition of a sentence within the Stipulated Guidelines Range of 360 months to life imprisonment. The Government recognizes the significance of such a sentence, and it does not make this request lightly. But Vanier, and his co-conspirator, ruined the lives of multiple young girls. They found vulnerable children, brought them under their control, and used extreme violence and manipulation for their personal financial gain. As Probation said in the PSR, the harm done to these victims "cannot be undone." The defendant's conduct, the need to deter both him and others from engaging in similar conduct, and the need to protect the community, warrant such a sentence.

*1. Seriousness of the Offense and Respect for the Law, and Just Punishment*

The seriousness of this offense cannot be overstated. Vanier victimized some of the most vulnerable members of our society for money. Vanier trafficked children—only 15 years old and only 12 or 13 years old—who had, at various points, been in-and-out of the foster care system.

He did so violently. He struck Minor Victim-1 so hard that he broke the brackets on her braces. He used whatever tools he could find, striking her with a liquor bottle, scaring her with a gun. He branded her with a tattoo of his name on her face, a permanent and prominent message

of his ownership. Every time Minor Victim-1 saw her own face in a mirror, she was reminded of his dominion over her. She was then 15 years old. Vanier was in his mid-20's at the time, nearly 10 years older than Minor Victim-1. The defendant hit Minor Victim-2 as well, and plied her with a variety of drugs, like Molly, Ecstasy, Xanax, and marijuana so that Minor Victim-2 could, and did, work "non-stop." After buying Minor Victim-2 from another pimp, he made her have sex with him, another way of asserting his ownership. She was then, at most, 13 years old. Minor Victim-2, as an adult, was revictimized by the defendant, who perversely forced her "learn" about pimping by making her watch YouTube videos about it. When she did not want to watch the videos, the defendant punched her in the neck. She had to observe the physical violence that the defendant used against Minor Victim-1.

The defendant's use of violence and control tactics kept the victims in line, it kept them subdued, and it allowed him to profit from their commercial sex acts. The defendant's methods succeeded in reducing the victims to property, to usurping their bodies for his ends. By the time that Minor Victim-2 worked again for the defendant as an adult, she handed over all of the money she earned to him, approximately $2,000 on a good night. As the Probation Report said, this is harm that cannot be undone.

As noted in the PSR, the investigation that led to this prosecution began when the FBI's Child Exploitation and Human Trafficking Force received a tip from a non-profit organization about trafficking of minor victims—many of whom were residing, or had previously resided, at Facility-1. (PSR ¶ 10). Ultimately, the investigation has led to the prosecution of 19 individuals for sex trafficking offenses, each of whom has been convicted either by entering into a plea agreement or following trial. Even among this group of 19 defendants, the defendant's—and, for that matter, Morciglio's—conduct stands out as particularly violent, exploitative, and horrendous. None of these defendants trafficked victims who were as young as Minor Victim-2 or used force and manipulation on the same scale as Vanier and Morciglio. The Stipulated Guidelines Range here reflects that this defendant's conduct, even among some similarly situated defendants, stands out because of his violence and the particular vulnerability of his victims.[3]

---

[3] Eight defendants have already been sentenced, including far less culpable defendants who assisted or facilitated other defendants' exploitation of minor girls and who pled to conspiracy to violate the Travel Act, in violation of Title 18, United States Code, Section 371. This group includes: Ruben Sands, who was sentenced to 60 months' imprisonment in *United States v. Sean Merchant, et al.*, 18 Cr. 527 (KMW); Christopher Bullock, Dariel Braham, and Adrienne Roberts, sentenced to 54, 48, and 48 months' imprisonment, respectively, in *United States v. Hubert Dupigny, et al.*, 18 Cr. 528 (JMF); and Cimmie Wright, who was sentenced to 51 months' imprisonment in *United States v. Jabari Kennedy, et al.*, 18 Cr. 529 (JFK). It also includes Lawrence Walsh, who was sentenced after the time of the defendant's submission. *See United States v. Lawrence Walsh*, S1 18 Cr. 874 (JSR). Walsh entered into a cooperation agreement and testified as a Government witness at trial against his co-defendant, Luidji Benjamin. Walsh received a sentence of time-served after serving approximately 19 months' imprisonment.

Other sentenced defendants who actively trafficked minors used substantially less or no violence, like Jermaine Myrie, sentenced to 135 months' imprisonment after pleading guilty to a single count of sex trafficking conspiracy, in violation of Title 18, United States Code, Section 1594(c), or Luidji Benjamin, sentenced to 204 months' imprisonment after being convicted at trial of one count of sex trafficking of a minor, in violation of Title 18, United States Code, Section

What distinguishes the defendant is the callousness, and intensity, of the violence and manipulation that he used to control his victims. The defendant treated his victims as if they were his property—he "purchased" Minor Victim-2 and branded Minor Victim-1 with a tattoo. He lowered his overhead by hacking off Minor Victim-2's hair, ensuring he would not have to pay for her upkeep. He told Minor Victim-2's family member that they would never see Minor Victim-2 again and threatened physical violence against that family member. (*See* Ex. A). The defendant's treatment of these victims reflects a startling disregard for his victims' lives and a disturbingly callous indifference to anyone's life but his own.

The defense's sentencing submission, and particularly the mitigation report (Ex. A) and letter from the defendant's sister (Ex. D) appended thereto, raise compelling considerations about the violent, tragic circumstances of the defendant's childhood. The defendant's life has been undeniably challenging. No one should have to suffer through such hardship. The Government also credits the defendant for his acceptance of responsibility, especially in view of the fact that a life sentence is within the Stipulated Guidelines Range. His acceptance of responsibility has spared his victims the further trauma of having to testify and relive their abuse at a trial. In the Government's view, however, there comes a point where conduct is so heinous, has such debilitating effects on others, and has such deleterious effects for society that such mitigating factors are simply outweighed by the gravity of the offense conduct. This is such a case. The defendant caused immeasurable suffering to Minor Victim-1 and Minor Victim-2. Put simply, he not only sold them to strangers for sex, he brutalized them, reduced them to chattel, and effectively terrorized them into obedience. As much as the defendant encountered difficulties in his own childhood, he robbed Minor Victim-1 and Minor Victim-2 of their childhoods and forever altered their lives. The tragic circumstances of his own life do not change the fact that he has exhibited a dangerous brutality and indifference to the victims here despite, or even because of, their vulnerability.

The defendant's role, the extent of the harm he imposed on these vulnerable victims, and the seriousness of the offense are all appropriately addressed and accounted for in the Guidelines calculation. Accordingly, a sentence within the Stipulated Guidelines Range of 360 months to life imprisonment would be just and proper here.

---

1591(b)(2), and one count of sex trafficking conspiracy, in violation of Title 18, United States Code, Section 1594(c). *See United States v. Jermaine Myrie*, S3 18 Cr. 527 (KMW); *see United States v. Luidji Benjamin*, 18 Cr. 874 (JSR).

The defendant's conduct is comparable, though significantly more violent, to defendants who have yet to be sentenced, including: Lloyd Kidd, who was convicted at trial of sex trafficking and production of child pornography offenses, *see United States v. Lloyd Kidd*, S2 18 Cr. 872 (VM); Hubert Dupigny, who was convicted at trial of sex trafficking offenses, *see United States v. Hubert Dupigny*, S1 18 Cr. 528 (JMF); as well as other defendants, who pled guilty to substantive counts of sex trafficking minors, including Sean Merchant, *see United States v. Sean Merchant*, S4 18 Cr. 527 (KMW), and Steven Lesane, *see United States v. Steven Lesane*, S7 18 Cr. 527 (KMW). Nevertheless, the defendant's Stipulated Guidelines Range exceeds that of other similarly situated defendants, such as Sean Merchant (235 to 293 months' imprisonment) and Steven Lesane (210 to 262 months' imprisonment).

### 2. *The Need to Protect the Public and Deter the Defendant and Other Similarly Situated Individuals*

The defendant's criminal history is also an aggravating factor that favors imposition of a sentence within the Stipulated Guidelines Range. The defendant has a long record of disobeying law enforcement and failing to abide by the law. Although some of those offenses were minor—such as failing to pay for transportation or engaging in disorderly conduct—others were far more serious and further demonstrate the defendant's violent nature and reckless disregard for human life, particularly when he stands to benefit financially. In 2014, for example, the defendant robbed a store, got into a fight with the store manager, kicked down the front door of the store, and "threatened the store manager with a box cutter." (PSR ¶ 56.) In 2011, the defendant and several others were arrested after they were seen repeatedly punching and kicking a victim, who they then robbed. (PSR ¶ 48.) Only a few days later, the defendant robbed yet another victim on the street, "simulated a weapon with his hand," and forcibly removed the victim's cellphone. (PSR ¶ 49.) The defendant has exhibited a troubling pattern of using force against those weaker than him to take what he wants.

The defendant was sentenced to substantial prison terms for some of those offenses. Yet, those sentences did nothing to deter the defendant from committing the instant offense, which is the most serious in his long criminal history. Indeed, between his initial trafficking of Minor Victim-2 and when he first met Minor Victim-1, he was convicted of no fewer than 10 offenses. Yet, he then continued to engage in abhorrent conduct by trafficking Minor Victim-1 and revictimizing Minor Victim-2. The defendant has demonstrated that he poses a real and escalating danger to the community and those vulnerable within it. The only measure that stopped the defendant from continuing to engage in profiting from commercial sex was his December 2018 arrest. This submission cites only a few examples of the text messages identified by law enforcement during searches of certain of the defendant's cellphones. In actuality, there are dozens, if not hundreds, of text messages arranging commercial sex acts. The defendant's engaging in this behavior was, to him, normal. When conduct like this becomes unremarkable to an individual—just a part of everyday life—"right" and "wrong" lose meaning, and lenient sanctions lose their effectiveness. To put a fine point on it: this investigation has showed, regrettably, that the only way to protect the community, particularly *vulnerable* members of the community, from the defendant's crimes, is incapacitation. That is the only way future victims will be prevented from suffering, at the defendant's hands, some of the horrors he survived. Accordingly, a substantial sentence is necessary to deter the defendant and to protect the public from future crimes by this defendant.

Moreover, there also is a stark need for general deterrence in this case, as the offense involved the victimization of some of the most vulnerable members of society. A substantial sentence of incarceration within the Stipulated Guidelines Range would send a powerful message to others who might seek to victimize minors that such actions will not be taken lightly. A period of incarceration of 360 months to life imprisonment would demonstrate that those who victimize children—*especially* vulnerable ones from the foster care system—will be held accountable for the incalculable pain that they impose on their victims.

**F.  Conclusion**

   For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range of 360 months to life imprisonment.  Such a sentence would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

              Respectfully submitted,

              AUDREY STRAUSS
              Acting United States Attorney

     By:   /s/
              Mollie Bracewell
              Elinor Tarlow
              Jacob Gutwillig
              Assistant United States Attorneys
              (212) 637-2218/1036/2215