UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/17/21
```

UNITED STATES OF AMERICA,

-against-

CARLTON VANIER,

Defendant.

OPINION & ORDER

S1 18-CR-873 (VSB)

__VERNON S. BRODERICK, United States District Judge__:

Currently before me is the motion of Defendant Carlton Vanier ("Defendant" or "Vanier") to withdraw his guilty plea to Count Two of Superseding Information S1 18 Cr. 873, or, in the alternative, for a hearing pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979).  Because I find that Vanier waived his right to withdraw his guilty plea, has not otherwise established a legitimate basis to withdraw his guilty plea, and a sentencing hearing is not warranted given the circumstances presented here, Vanier's motion to withdraw his guilty plea or for a sentencing hearing on Count Two is DENIED.

## I.      __Background and Procedural History__[1]

On December 11, 2018, Vanier and a co-defendant were charged in Sealed Indictment 18 Cr. 873 ("Indictment"), which contained five counts.  The following day, the Indictment was unsealed, and Vanier was arraigned on the Indictment and pled not guilty.  The Indictment charged Vanier and his co-defendant Ruben Morciglio with one count of conspiring to commit

---

[1] Vanier does not dispute the validity of his guilty plea to Count One of Superseding Information S1 18 Cr. 873 (VSB) (Doc. 30, the "Superseding Information").  Therefore, I only recount the background and procedural history necessary to address Vanier's plea of guilty to Count Two of the Superseding Information.  References to "Doc." in this Opinion & Order refer to the document number given to filings by the court's electronic filing system.

sex trafficking, and each separately with two counts of sex trafficking.  At his arraignment,

Vanier consented to detention without prejudice to seek bail in the future.

In a letter dated December 14, 2018, Vanier requested to be released on bail and

presented a proposed bail package.  I held a bail hearing that day.  (*See* Doc. 7.)  During the bail

argument, defense counsel and the Government each had a copy of a report written by Pretrial

Services, which included a recitation of Vanier's prior criminal record.  Defense counsel

presented a bail package and argued that Vanier should be released on bail.  As part of his

argument, defense counsel stated, "All I'm suggesting is we have minor children here.  I,

obviously, am not in a position to confront all of the facts or refute all of the facts.  But, the

reliability and credibility of the witnesses I think is an issue that the Court can consider."  (Doc.

7, at 15:15-19.)  As part of its argument that I should deny Vanier's bail application, the

Government summarized some of Vanier's criminal conduct.  Specifically, the Government

stated that:

> As your Honor is aware, this is a presumption case.
>
> First, with respect to the nature and circumstances of this matter, even compared to other cases involving sex trafficking of minors, the defendant's conduct here is particularly egregious because the defendant and his coconspirator sought out minors who were in the social services system.  These were particularly vulnerable victims.  They were housed in social services because they did not have support or guidance or anywhere else to turn.  They were in the social services system precisely to protect them and/or rehabilitate them from the conduct that the defendant engaged in here.  The defendant exploited their vulnerability forcing multiple minor victims to engage in prostitution for his benefit, including by using force to make them do so.
>
> The evidence in this case, the government would proffer, is overwhelming.  The government has multiple eyewitnesses, over four hundred advertisements advertising commercial sex services that we believe were posted by the defendant, and Facebook messages with the defendant's own words talking about engaging in prostitution with a minor.
>
> This conduct has spanned years and it has involved multiple minor victims

including a minor victim as young as 13 years old.

*************************************************

In purchasing the minor victim the defendant literally treated these young girls like commodities and dehumanized them by forcing them to engage in prostitution. Other minor victims worked for the defendant engaging in prostitution at an apartment in the Bronx. The defendant gave victims drugs and forced them to dress in a provocative way. He chopped off their hair because he said it would be too expensive to maintain for purposes of prostitution. In addition, the defendant has used significant violence again[st] these minor victims; including striking them, punching them, including with objects, refusing to let them go to the hospital to get needed medical attention. Victims have observed him with firearms. And we've received reports that he brandished a firearm in connection with the sex trafficking.

In short, the defendant poses not only a grave danger to the community but to its most vulnerable members.

(*Id*. at 9:5-10:2; 11:5-20.) I denied Vanier's request for bail, finding that he was a danger to the community and posed a risk of flight based upon the substantial jail time he faced if convicted on the charges in the Indictment. (*See id*. at 20:16-18.)

During a conference on November 21, 2019, the parties advised me that a plea offer had been made to Vanier, and that although it had been anticipated Vanier would plead guilty during the conference, he had changed his mind and requested more time to consider the plea offer. (Doc. 34, at 2:19-23 ("But the defendant wants additional time to consider the plea. We spent a good deal of time. We thought we were ready to go, but we are not at this juncture. So the government has agreed to extend to December 6 the plea offer.").) I reminded the parties that I had previously set a trial date of February 18, 2020, advised Vanier that he "should take the time [he] need[s]" to consider the plea, told him that whether he took a plea or decided to go to trial was his decision, (*id*. at 3:4-13), and issued an order the next day confirming the trial date and setting dates for the filing of pretrial submissions, (*see generally* Doc. 28). Vanier then informed me that he was not satisfied with his attorney's representation and that he wanted a new attorney.

3

I told Vanier that I would relieve his current attorney and assign a new attorney to represent him, but made clear that I was not going to adjourn the date of the trial. The discussion among myself, Vanier's counsel, and Vanier went as follows:

> THE DEFENDANT: . . . I just want to say that I feel I need another lawyer to represent me. I need another lawyer. This lawyer is not representing me how I feel like he should.
>
> THE COURT: Let me ask, Mr. Roth, do you feel that you have reached a point with Mr. Vanier that your representation, the issues could not be mended in any way?
>
> MR. ROTH: Judge, I think part of it is the not too infrequent predicament of his request to get a better offer, so to speak. And in that regard, when I have just relayed what I know from the government, I think we are at the bottom line here. But he has expressed to me, when we discuss certain issues, that he is uncomfortable with me at this juncture. And certainly if he is going to head to trial, he should have the full confidence in his attorney.
>
> THE COURT: I agree.
>
> Mr. Vanier, you should know that to the extent -- Ms. Williams, we just need to see who might be on duty today from CJA, and we need to make sure there is no conflict.
>
> Mr. Vanier, I am going to grant your request to relieve Mr. Roth. I don't know exactly what the issue is, but if it relates to the plea, that is in large part out of any attorney's hands, including Mr. Roth, because the government decides what offer it should make.
>
> Having said that, I do think it is important, because if the plea does not work, as Mr. Roth has said, you will be going to trial and it's important that you have confidence in your lawyer. I will say this. I have known Mr. Roth for more time that I'd like to admit as a defense attorney, and I understand that there are times when this happens, in particular, when there is a plea. And so I am not sure if it will happen this afternoon, but we will relieve Mr. Roth and appoint new counsel.
>
> I would say that I am going to ask any new counsel that they would be available and be prepared to go to trial on the February date that we have set. I don't intend to move that date. So subject to that, I will get you new counsel.

(*Id.* at 5:2-6:13.) I appointed new counsel for Vanier during a conference held on November 25, 2019. (*See generally* Doc. 32.)

On December 16, 2019, Vanier pled guilty the Superseding Information which charged

him with sex trafficking in Count One and conspiracy to commit sex trafficking in Count Two.

(*See generally* Doc. 38.)  Specifically, Count Two, the only count addressed in Vanier's motion

to withdraw, reads as follows:

> 2.  From in or about 2010 up to and including in or about 2011, within the Southern District of New York and elsewhere, CARLTON VANIER, a/k/a "Lucky," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit sex trafficking, in violation of Title 18, United States Code, Sections 1591(a)(1) and (a)(2).
>
> 3.  It was a part and object of the conspiracy that CARLTON VANIER, a/k/a "Lucky," the defendant, and others known and unknown, would and did, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide, obtain, and maintain, by any means persons, and benefit, financially and by receiving anything of value, from participation in a venture which engaged in any such act, knowing and in reckless disregard of the fact that (1) means of force, threats of force, fraud, coercion, as described in Title 18, United States Code, Section 1591(e)(2), and a combination of such means, would be used to cause such persons to engage in one and more commercial sex acts, and (2) that one or more such persons had not attained the age of 18, in violation of Title 18, United States Code, Sections 1591(a)(1) and (a)(2).
>
> (Title 18, United States Code, Section 1594(c).)

(Superseding Information ¶¶ 2–3.)

At the beginning of his guilty plea, Vanier was sworn, and he acknowledged that he

understood that if he answered any of my questions falsely, he could be prosecuted for the

separate crime of perjury.  (Doc. 38, at 4:23-5:3.)  With regard to the plea agreement, I asked

Vanier a number of questions to determine whether he understood the terms of his plea

agreement with the Government.  In response to my questions, Vanier acknowledged that:  (1) he

had read the plea agreement prior to signing it; (2) he had discussed it with his attorney before he

signed it; (3) he fully understood it before he signed it; (4) as part of his agreement with the

Government, he agreed to the Guidelines calculation applicable to the charges to which he was

pleading guilty; (5) he "waived [his] right to appeal or otherwise challenge a sentence within 360

months to life"; (6) the "plea agreement constitute[d] [his] complete and total understanding of

[his] agreement with the government; (7) nothing was left out of the plea agreement; and (8) no

one had offered him any inducement, forced him or threatened him to get him to plead guilty or

sign the plea agreement. (Doc. 38, at 17:21-20:3.) Vanier also acknowledged that he understood

he faced a maximum sentence of life on each of Counts One and Two, and that he faced a

mandatory minimum sentence on Count One of ten years. (*Id*. at 13:25-14:21; *see also* 21:22-

22:5 (clarifying that Count Two does not carry a mandatory minimum).)

The offense level for Count One was 36. (Doc. 81-1, at 3.) The plea agreement provided

that United States Sentencing Guidelines Section 2G1.3(a)(1) was applicable to the offense

charged in Count Two, resulting in a base offense level of 34. (*Id.*) The agreement also

contained the following Guidelines calculation related to Count Two:

Count Two ("Minor Victim-2")

7.  U.S.S.G. Section 2X1.1 is applicable to the offense charged in Count Two.
Pursuant to U.S.S.G. Section 2X1.1(a), because the conspiracy was completed, the
base offense level for the conspiracy charged in Count Two is determined by
calculating the base offense level for the intended offense.

8.  U.S.S.G. Section 2G1.3 is applicable to the offense charged in Count Two
involving Minor Victim-2. Pursuant to U.S.S.G. Section 2G1.3(a)(1), the base
level offense is 34.

9.  Pursuant to Section 2G1.3(b)(2)(B) of the Guidelines, there is a two point
enhancement to the base offense level because the defendant unduly influenced
Minor Victim-2 to engage in prohibited sexual conduct.

10.  Pursuant to Section 2G1.3(b)(3)(A) of the Guidelines, there is a two point
enhancement to the base offense level because the offense involved the use of a
computer or an interactive computer service to persuade, induce, entice, coerce, or
facilitate the travel of Minor Victim-2 to engage in prohibited sexual conduct.

11.  Pursuant to Section 2G1.3(b)(4)(A) of the Guidelines, there is a two point
enhancement to the base offense level because the offense involved the commission

of a sex act or sexual contact.

12.  In accordance with the above, the offense level for Count Two is 40.

(*Id*.)  After the grouping analysis, the plea agreement calculated the resulting offense level as 42, and after the three-point reduction for Vanier's acceptance of responsibility, the offense level was 39.  (*Id.* at 3–4.)  The plea agreement calculated that Vanier's criminal history category as IV, and the resulting Guidelines range as 360 months' to life imprisonment.  (*Id*. at 5–6.)

> During his plea allocution related to Count Two, Vanier admitted that
>
> > In or about 2010, to in or about 2011, in the Bronx, New York, I, along with others, recruited -- I, along with others, agreed to recruit and advertise and using mobile devices girls for sex in exchange for money.  Some of these proceeds I received.  I agreed to do these acts knowingly and in reckless disregard of the fact that a combination of fraud threats -- fraud and threats would be used to cause such persons to engage in sex for money, and these girls have not attained the age of 18.
> >
> > I realize that I have hurt and endangered many others by my actions.  I'm sorry.

(Doc. 38, at 20:21-21:6.)  After Vanier admitted that he knew that what he did was illegal, (*id*. at 21:7-9), I confirmed that neither counsel knew of any reason I should not to accept Vanier's guilty plea, I found that the plea was knowing and voluntary, informed Vanier that the Probation Department would be interviewing him to prepare a presentence report, and set sentencing for April 3, 2020, (*id*. at 23:17-25:6).  After several adjournments at the request of the parties, sentencing was set for October 30, 2020.  (Doc. 62.)  On October 15, 2020, the office of Jonathan Rosenberg, PLLC ("Attorney Rosenberg" or "Defense Counsel") entered a notice of appearance on behalf of Vanier.  (Doc. 64.)  By letter dated October 22, 2020, Attorney Rosenberg requested an adjournment of Vanier's sentencing "in order to prepare for any potential hearing on the evidence presented at sentencing and to have attorney-client discussions with Mr. Vanier regarding his impending Judgment."  (Doc. 66.)  By endorsement, I adjourned

the sentencing *sine die* and directed "the parties, including attorneys Jonathan Rosenberg and Samuel Gregory . . . to appear on October 30, 2020 at 10:30 a.m., to discuss (1) Defendant's apparent retention of Jonathan Rosenberg, (2) any request by either Defendant or defense counsel Samuel Gregory to be relieved as counsel, and (3) a new date for sentencing." (Doc. 68.)

During the conference on October 30, 2020, I relieved Vanier's then-counsel and appointed Attorney Rosenberg to represent Vanier. (*See generally* Doc. 72.) It was during this conference that Vanier first raised the possibility of seeking a hearing pursuant to *Fatico*, 603 F.2d at 1053, and the possibility of filing a motion to withdraw his guilty plea. (*See generally id.*) Specifically, Defense Counsel stated that he "ha[d] a good-faith basis to believe that [Vanier] was in an Upstate facility in 2010, [2011], around those dates" and suggested that Minor Victim-2's statements were "inaccurate." (*See id.* at 5:16-18, 7:16.) During that conference I gave defense counsel time to pursue these theories—*i.e.*, that there was no factual basis for Count Two—and to file a letter setting forth his findings and any arguments based upon those findings.

On January 26, 2021, the Vanier filed a letter motion seeking to "withdraw his plea pursuant to Rules 11 and 32(e) of the Federal Rules of Criminal Procedure" and requesting that "[t]he government's draconian sentencing recommendation of 360 months to life in prison should be carefully reviewed based on an evidentiary hearing pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979)." (See Doc. 80, at 1, 3–4.) The Government filed its opposition to on February 2, 2021. (Doc. 81.) Vanier filed a reply on February 9, 2021. (Doc. 82.) On February 25, 2021, I issued an order ("February 25 Order") directing the parties to appear for a hearing on March 30, 2021, and be prepared to answer the questions listed in my February 25

Order.  (*See generally* Doc. 83.)  The Government submitted a letter in partial response to my

February 25 Order on March 29, 2021.  (Doc. 84.)  During the hearing on March 30, 2021, at the

request of defense counsel, I granted an adjournment to, among other things, permit defense

counsel to review documents provided with the Government's March 29 letter, and scheduled

another hearing for April 28, 2021.

I held a hearing on April 28, 2021, at which the parties presented their arguments related

to Vanier's motion and responded to my questions.  (*See generally* Doc. 88.)  In an order issued

the same day as the April 28 hearing, I directed the parties to submit a schedule for supplemental

submissions.  (Doc. 85.)  Vanier submitted his supplemental submission on June 7, 2021 ("Def.'s

Supp."), (Doc. 90), and the Government submitted its supplemental submission on June 21, 2021

("Govt.'s Supp."), (Doc. 93).

## II.  **Legal Standards**

### A.  *Motion to Withdraw a Guilty Plea*

A defendant's motion to withdraw his guilty plea is governed by Federal Rule of

Criminal Procedure 11(d)(2)(B).  *United States v. Rosen*, 409 F.3d 535, 545 (2d Cir. 2005). [2]

Rule 11(d)(2)(B) provides that a defendant may move to withdraw a guilty plea on showing a

"fair and just reason"; however, "it is basic that 'a defendant has no absolute right to withdraw

his plea of guilty.'"  *Id*. (quoting *United States v. Williams*, 23 F.3d 629, 634 (2d Cir. 1994)).

The rationale for this is that "'society has a strong interest in the finality of guilty pleas,' and

allowing withdrawal of pleas not only 'undermines confidence in the integrity of our judicial

procedures,' but also 'increases the volume of judicial work, and delays and impairs the orderly

---

[2] The "fair and just reason" standard was first articulated in Federal Rule of Criminal Procedure 32(d) in 1983, then was relocated to Rule 32(e) in 1994, and then was relocated again, to Rule 11, in 2002.  *Rosen*, 409 F.3d at 545. Because these revisions were solely stylistic in nature, "cases interpreting the former versions of Rule 32 are authority for the proper interpretation of the current Rule 11(d)(2)(B)."  *Id.*

administration of justice.'" *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) (quoting *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (per curiam)).

"[T]he defendant bears the burden of showing that relief should be granted." *United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001) (citing *United States v. Avellino*, 136 F.3d 249, 261 (2d Cir. 1998)).  In assessing whether or not a defendant has established "fair and just reason" to withdraw his guilty plea, a court considers "(1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea." *United States v. Schmidt*, 373 F.3d 100, 102–03 (2d Cir. 2004).  "However, the government need not demonstrate prejudice where the defendant fails to show sufficient grounds to justify withdrawal of the plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997).

If a defendant moves to withdraw his plea on the grounds that his plea was not voluntary, the court will not grant the motion unless the defendant "raise[s] a significant question about the voluntariness of the original plea." *Id.*; *see also Rosen*, 409 F.3d at 547–48.  A court is "entitled to rely upon the defendant's sworn statements, made in open court . . ., that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, [and] understood that he was waiving [certain rights]." *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001); *accord United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (statements during plea allocution have "such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made").  "A defendant's bald statements that simply contradict what he said at

his plea allocution are not sufficient grounds to withdraw the guilty plea." *Torres*, 129 F.3d at 715.  Therefore, a defendant's belated claim of innocence is insufficient to require granting a motion to withdraw a guilty plea.  *United States v. Hughes*, 325 F.2d 789, 791–92 (2d Cir. 1964).  Moreover, the fact that a defendant changed his mind—after reevaluating either the Government's evidence or the penalty he faces—is not a sufficient reason to permit the withdrawal of a guilty plea.  *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992).

The decision to allow a guilty plea to be withdrawn is "committed to the discretion of the district judge," *United States v. O'Hara*, 960 F.2d 11, 15 (2d Cir. 1992), and is reviewed for an abuse of discretion, *see Williams*, 23 F.3d at 635.  A motion to withdraw a guilty plea may be denied without a hearing where the defendant's allegations "merely contradict the record, are inherently incredible, or are simply conclusory."  *Gonzalez*, 970 F.2d at 1100.

## B.  *Fatico Hearing*

"When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor . . . provided that the information has sufficient indicia of reliability to support its probable accuracy."  U.S. Sentencing Guidelines ("U.S.S.G.") Manual § 6A1.3(a).  However, no defendant is entitled, as of right, to a *Fatico* hearing to resolve disputed sentencing issues.  *See United States v. Ghailani*, 733 F.3d 29, 54 (2d Cir. 2013).  A "court is not required, by either the Due Process Clause or the federal Sentencing Guidelines, to hold a full-blown evidentiary hearing in resolving sentencing disputes.  All that is required is that the court afford the defendant some opportunity to rebut the Government's allegations."  *United States v. Slevin*, 106 F.3d 1086, 1091 (2d Cir. 1996) (internal quotation marks and citations omitted).  "[T]he procedure followed in resolving disputed factors at sentencing rests in the district court's sound

discretion." *United States v. Prescott*, 920 F.2d 139, 144 (2d Cir. 1990). However, "[a]n

evidentiary hearing may sometimes be the only reliable way to resolve disputed issues."

U.S.S.G. § 6A1.3 cmt. (citing *United States v. Jimenez Martinez*, 83 F.3d 488, 494–95 (1st Cir.

1996)). When deciding between a *Fatico* hearing and another means of resolving a factual

dispute, the sentencing court should consider "the nature of the dispute, its relevance to the

sentencing determination, and applicable case law." *Id.*; *see also United States v. CCBrinkworth*,

68 F.3d 633, 640 (2d Cir. 1995) (upholding trial court's decision not to grant a *Fatico* hearing

where the court reviewed the legal memoranda of the parties, the grand jury testimony, an

unsworn statement of a witness, and heard oral argument at sentencing). The decision to hold or

not to hold a *Fatico* hearing turns largely on whether the contested information is relevant to the

trial court's potential sentence. *See* U.S.S.G. § 6A1.3 cmt. If the contested information is

relevant to the potential sentence, then it need only be proven by a preponderance of evidence.

*See United States v. Ruggiero*, 100 F.3d 284, 290 (2d Cir. 1996). Even then, a hearing may be

unnecessary. "[O]ral and written statements" and a chance to submit evidence constitute

"adequate opportunity" to challenge a sentence. *See Brinkworth*, 68 F.3d at 640–41. If the

sentencing court does not plan to take the contested information into account, it need not grant a

*Fatico* hearing to resolve the factual dispute. *See Ghailani*, 733 F.3d 29, 54–55 (2d Cir. 2013)

(finding a *Fatico* hearing about hearsay evidence was "particularly unnecessary" where the

District Court judge had "repeatedly and explicitly stated that the hearsay complained of would

'not affect the sentence'").

## III.   <u>Discussion</u>

During his criminal case Vanier has had three attorneys, and his case has been punctuated

by delays prior to his guilty plea and scheduling of his sentencing. Specifically, I relieved

Vanier's first attorney at his request on November 21, 2019, after that attorney had negotiated a plea deal with the Government in advance of the February 18, 2020 trial date.  Vanier's second attorney represented Vanier at his guilty plea on December 16, 2019.  The sentencing—after several adjournments—was scheduled for October 30, 2020.  However, two weeks prior to sentencing, Vanier's third attorney filed a notice of appearance.  Attorney Rosenberg then requested further adjournments of the sentencing to, among other things, (1) subpoena records from a residential drug treatment program, (2) investigate Vanier's claims of actual innocence, and (3) brief Vanier's motion to withdraw his guilty plea or for a *Fatico* hearing.  There were also a series of conferences held regarding the investigation and motion during which, among other things, Vanier advanced various and often shifting arguments in support of his motion to withdraw his plea or for a sentencing hearing.

Ultimately Vanier settled on two theories for the withdrawal of his guilty plea to Count Two of the Superseding Information—while simultaneously arguing that I have the "power to enforce the plea agreement as to Count One, and proceed to sentencing"—"(1) that the Government breached its plea agreement by withholding *Giglio* material that was material to Defendant's decision to enter a plea as to Count Two; and (2) that Defendant's plea was not knowing, and as such, not voluntary."  (Def.'s Supp. 1.)  In the alternative, Vanier seeks a "*Fatico* hearing in order to challenge false or mistaken assertions in the Government's sentencing memorandum that he was not apprised of at the time of signing the plea agreement, which in its own right, neglected to cite a penalty clause under Count Two of the Superseding Information."  (*Id.*)  In opposition, the Government argues that (1) Vanier's allocution to Count Two was sufficient, (Govt.'s Supp. 1–4), (2) Vanier has not met his burden under the Federal Rules of Criminal Procedure for the withdrawal of his guilty plea to Count Two, (*id.* 4–6), (3)

Vanier's alternative request for a *Fatico* hearing should be denied because he has not identified specific factual issues he seeks to challenge at such a hearing, (*id*. 6), and (4) Vanier's "claims about *Brady* and *Giglio* violations have no grounding in fact or law" and must be rejected, (*id*. 6–7). The Government is correct.  Vanier has not met his burden warranting the granting withdrawal of his guilty plea, as his guilty plea was knowing and voluntary, and he has not identified contested factual matters that require a hearing.

### A.  *Motion to Withdraw Guilty Plea*

#### 1.  Vanier's Failure to Establish Fair and Just Reason for the Withdrawal of his Guilty Plea

Vanier claims that he is factually innocent of Count Two.  This claim principally rests on his assertion of a purported alibi.  The essence of his claim is that he was either incarcerated or in a drug treatment facility during 2010 and 2011.

The Superseding Information charges Vanier with participating in a sex trafficking conspiracy "[f]rom in or about 2010 up to and including in or about 2011."[3]  As a factual matter, even if I accept Vanier's assertions concerning his whereabouts during 2010 and 2011, Vanier has not established that he was in a custodial setting during all of 2010 and 2011.  Indeed, Vanier admits that he was at liberty from January 1, 2010 to July 9, 2010, and again from December 13, 2010 to April 11, 2011—a total of 308 days.  (Def.'s Supp. 6.)  The fact that he may have been in a rehabilitation facility during part of 2010 and in prison during a portion of 2011 does not demonstrate that he is innocent or preclude his participation in the charged sex trafficking conspiracy during 2010 and 2011.  Therefore, Vanier does not have an alibi, and he has not

---

[3] Had Vanier gone to trial, the Government would not have been required to prove the dates he participated in the conspiracy with precision.  "Where 'on or about' language is used, the government is not required to prove the exact date, if a date reasonably near is established. This is especially true where, as here, the exact time when an offense was committed is not an essential element of the offense charged."  *United States v. Nersesian*, 824 F.2d 1294, 1323 (1987) (internal citation omitted).

demonstrated any compelling reason to believe that he is factually innocent.

I also note that Vanier's claims of innocence are contradicted by his sworn statements under oath. In contrast to his sworn statements during his guilty plea, in support of this motion, Vanier has only asserted his innocence through statements of his attorney; he has not submitted an affidavit, declaration, or even an unsworn statement proclaiming his innocence. During his guilty plea, Vanier admitted, among other things, that he "along with others, agreed to recruit and advertise and using mobile devices girls for sex in exchange for money," that he received "[s]ome of these proceeds," and that he "agreed to do these acts knowingly and in reckless disregard of the fact that a combination of . . . fraud and threats would be used to cause such persons to engage in sex for money, and these girls have not attained the age of 18." (Doc. 38, at 20:21-21:5.) Vanier's bald statements through his attorney that simply contradict what he said under oath during his plea allocution are not sufficient grounds to warrant granting the withdrawal of his guilty plea. *See Torres*, 129 F.3d at 715.

The amount of time that elapsed between Vanier's guilty plea and the first time he raised the possibility of filing a motion to withdraw his guilty plea also weighs against granting Vanier's motion. Vanier entered his guilty plea on December 16, 2019, and during the conference on October 30, 2020, Vanier raised for the first time through counsel the possibility of (1) filing a motion to withdraw his guilty plea, or (2) seeking a *Fatico* hearing. (*See generally* Doc. 72.) That means ten and a half months elapsed between Vanier's guilty plea and the first time he informed me that he was considering filing a motion to withdraw his guilty plea. Courts have held that delays of far less time weighed against a defendant. *See*, *e.g.*, *United States v. Obiorah*, 536 F. App'x 53, 55 (2d Cir. 2013) (eight months) (citing, *inter alia*, *United States v. Grimes*, 225 F.3d 254, 259 (2d Cir. 2000) (five months)); *United States v. Baum*, 380 F. Supp. 2d

187, 206–07 (S.D.N.Y.), *aff'd sub nom. United States v. Best*, 139 F. App'x 366 (2d Cir. 2005) (three and a half months); *United States v. Wilson*, 828 F. Supp. 2d 679, 685 (S.D.N.Y. 2011), *aff'd*, 523 F. App'x 30 (2d Cir. 2013) (two months).

Vanier also claims that I should grant his motion to withdraw because the Government failed to disclose information pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150, 154–55 (1972).  Specifically, Vanier claims that the Government failed to disclose "(1) his actual incarceration dates in 2011, which would have impeached the credibility of the FBI affidavits; (2) his custodial placement in an upstate facility in 2010, which would have impeached any witness statements as to Defendant's alleged activities during that time period; (3) that there existed no evidence Defendant communicated with any alleged 'Minor Victim' in 2010 or 2011, let alone viewed such a person through any medium beyond the statement of a third-party hearsay informant—an adult—who had all kinds of reasons to provide false information to the Government."  (Def.'s Supp. 3.)  In opposition, the Government argues that the information Vanier alleges the Government failed to disclose was all known to him and therefore cannot be considered *Brady* or *Giglio*, and that the Government did, in fact, produce evidence in discovery of Vanier's conduct towards a minor victim.  (Govt.'s Supp. 6–7.)

As an initial matter, Vanier agreed as part of his plea agreement with the Government to "waive[] any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement."  (Doc. 81-1, at 7.)  Moreover, as

16

stated above, neither Vanier's stay at the drug treatment facility in 2010 nor his incarceration in 2011 establish his factual innocence because—even under the most conservative view of the time frame of the conspiracy—he was at liberty for 308 days.

Plainly, Vanier's claim that "there existed no evidence Defendant communicated with any alleged 'Minor Victim' in 2010 or 2011" is wrong.  It is clear that Minor Victim-2 spoke to law enforcement agents and provided first-hand information that was detailed in the various affidavits in support of search warrant applications produced by the Government in discovery. (Docs. 84-2, 84-3, 84-4.)[4]  In any event, this is an attack on the quantum of evidence, and the fact that Vanier changed his mind after reevaluating either the Government's evidence or the penalty he faced is not a sufficient reason to permit the withdrawal of a guilty plea. *See Gonzalez*, 970 F.2d at 1100.[5]  To the extent that Vanier is arguing that he was unaware that the Government was claiming that Minor Victim-2 was 12 or 13 during the time frame of the conspiracy, that argument is belied by the record.  During the hearing on Vanier's bail application, held a week after his arrest, the Government stated, among other things, in Vanier's presence, that his conduct "spann[ed] years and it [] involved multiple minor victims including a minor victim as young as 13 years old."  (Doc. 7, at 9:25-10:2.)

Moreover, each of the facts that Vanier claims were not disclosed to him were either known to him or were in fact disclosed.  As a prefatory matter, with regard to Vanier's incarceration in 2011, Vanier was provided with a copy of his prior criminal record at several

---

[4] Victim-2 is identified in the Affidavits as "Victim-3."

[5] Vanier's repeated reference to the evidence related to Count Two and his frequent reference to the Guidelines range of 360 months' to life each support the conclusion that Vanier was second guessing his decision to plead guilty after "reevaluating" "the Government's evidence" and "the penalty he faced."  Indeed, Vanier's supplemental submission referenced the quantum and admissibility of the evidence the Government purportedly had to support Count Two at least sixteen times.  Similarly, Vanier referenced either the Guidelines range of 30 years to life or the maximum sentence of life at least seven times.  (*See generally* Def.'s Supp.)  Indeed, as noted below, Vanier claims that he essentially lied during his guilty plea because he was facing life imprisonment.

points during his prosecution:  (1) when his pretrial services report was provided to him in

connection with his bail application; (2) when it was produced by the Government as part of

discovery, *see* Fed. R. Crim. P. 16(a)(1)(D) ("Upon a defendant's request, the government must

furnish the defendant with a copy of the defendant's prior criminal record that is within the

government's possession, custody, or control if the attorney for the government knows—or

through due diligence could know—that the record exists."); (3) in his plea agreement; and (4) in

his Presentence Investigation Report.  Vanier's prior criminal record shows that in 2011 Vanier

received a sentence of one-year imprisonment on each of two robbery convictions.  Vanier does

not cite any case law that supports (1) his assertion that the Government was required to provide

him with his "actual incarceration dates in 2011" or (2) his claim that the Government was

required to figure out he was in a residential drug treatment program and the length of time he

was in that program in 2010.  The reason is simple; the Government had no obligation to provide

Vanier with this information.[6]  Moreover, Vanier knew when he was incarcerated and when he

attended the residential treatment program because he lived those events, as such they do not

qualify as *Brady* information.[7]  *See*, *e.g.*, *United States v. Orena*, 145 F.3d 551, 557 n.4 (2d Cir.

1998) ("It is well settled that evidence is not considered to have been suppressed within the

meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have

known of the essential facts permitting him to take advantage of that evidence.") (quoting *United*

---

[6] Rule 16(a)(1)(D) of the Federal Rules of Criminal Procedure requires the disclosure upon request of a defendant's prior criminal record in the Government's possession.  Vanier does not address this rule or provide any legal support that the Government's obligation extends to providing a defendant with the dates of his incarceration.

[7] In addition, law enforcement had nothing to do with Vanier's stay in the residential drug rehabilitation program. Rather it was Vanier's mother that had him placed in the residential drug treatment program.  (Doc. 88, at 5:7-12) ("My client -- it was not due to a criminal conviction.  I made the implication in one of my letter motions, among my own assumption in my head, that due to some kind of criminality, he was put in that treatment facility.  His mom, his mom put him in there.  She had him go up to that facility.")  Therefore, not only was this information known to Vanier, the Government—short of asking Vanier or his mother—could not have known that Vanier was in a residential drug treatment program in 2010.

*States v. Torres*, 129 F.3d 710, 717 (2d Cir. 1997)); *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993) ("[T]he rationale underlying *Brady* is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government." (quoting *United States v. LeRoy*, 687 F.2d 610, 619 (2d Cir. 1982)); *see also United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990) (the "traditional rules of criminal discovery" provide that "the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense").

### 2.  Vanier's Guilty Plea was Sufficient, Knowing and Voluntary

At my request, during Vanier's guilty plea proceeding, the Government outlined the elements of Counts One and Two of the Superseding Information.  With regard to Count Two, the Government stated that

> Count Two of the superseding information charges the defendant with violating Title 18, United States Code, Section 1594(c), which is conspiracy to commit sex trafficking.  The conspiracy elements:  One or more persons knowingly and willfully conspiring and agreed together with each other to -- and there are four elements here of sex trafficking, similar to those I just mentioned:

> First, that the defendant knowingly recruited, enticed, harbored, transported, provided, advertised, maintained, patronized, solicited, or obtained a person that was less than 18 years old; or, as I mentioned earlier, that the defendant knowingly benefited financially from that activity.

> Second, that the defendant knew that the child was less than 18 years old, acted in reckless disregard of the child victim's age, or had a reasonable opportunity to view the child victim.

> Third, that the defendant knew or believed that the person would be caused to engage in a commercial sex act.

> And fourth, that the recruiting, enticing, harboring, transporting, providing, advertising, patronizing, maintaining, soliciting, or obtaining was done in or affecting interstate or foreign commerce.

(Doc. 38, at 12:9-13:6.)  During his plea allocution, Vanier admitted to conduct that violated

each of these elements.  Specifically, with regard to the first, third and fourth elements, Vanier

stated that he, "along with others, agreed to recruit and advertise and using mobile devices[8] girls

for sex in exchange for money" and that "[s]ome of the proceeds [he] received." (*Id.* at 20:22-

25.)  With regard to the second element and the penalty provision in Title 18, United States

Code, Section 1591(b)(1),[9] Vanier acknowledged that "he took these action[s] knowingly and in

reckless disregard of the fact that a combination of . . . fraud and threats would be used to cause

such persons to engage in sex for money, and these girls have not attained the age of 18." (*Id.* at

20:25-21:4.)  Vanier's allocution was clearly sufficient.

        Vanier's plea was also knowing and voluntary.  At the beginning of his guilty plea,

Vanier was sworn, and acknowledged that he understood that if answered any of my questions

falsely he could be prosecuted for the separate crime of perjury.  (Doc. 38, at 4:23-5:3.)  Vanier

confirmed that:  (1) he had read the plea agreement prior to signing it; (2) he had discussed it

with his attorney before he signed it; (3) he fully understood it before he signed it; (4) as part of

his agreement with the Government he agreed to the Guidelines calculation applicable to the

---

[8] Vanier's admission that he and his co-conspirators used mobile devices to carry out sex trafficking is sufficient to effect interstate commerce. *See United States v. Frey*, 19-CR-537 (DRH), 2021 WL 215722, at *3 (E.D.N.Y. Jan. 21, 2021) (holding that defendant's conduct affected interstate commerce within the purview of Section 1591 where cell phones were used to arrange appointments with prostitutes.); *United States v. Rivera*, 13-CR-149(KAM), 2015 WL 7455504, at *19 (E.D.N.Y. Nov. 11, 2015) (holding that there was sufficient evidence that sex trafficking activities affected interstate commerce where defendant used his mobile phone to send text messages to facilitate prostitution and took photographs of a victim used in advertisements for prostitution on Backpage.com).  In addition, in his plea agreement Vanier stipulated to a two level enhancement "because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of Minor Victim-2 to engage in prohibited sexual conduct."  (Doc. 81-1, at 3.)  I can rely on Vanier's stipulation in the plea agreement in determining that Vanier's conduct had a sufficient effect on interstate commerce.  *See United States v. Lesane*, 18-CR-527 (KMW), 2020 WL 705087, at *4 (S.D.N.Y. Feb. 12, 2020) ("A court may rely on any facts on the record to satisfy itself that there exists a factual basis for a plea, including facts drawn from the defendant's admissions and the plea agreement.").

[9] The prosecutor did not mention the penalty provision when he recited the elements of the offense because Section 1591(b)(1) is not an element of the conspiracy offense, but applies as a Guidelines enhancement.  (Govt's Supp. 3.)

charges to which he was pleading guilty; (5) he "waived [his] right to appeal or otherwise

challenge a sentence within 360 months to life"; (6) the "plea agreement constitute[d] [his]

complete and total understanding of [his] agreement with the government"; (7) nothing was left

out of the plea agreement; and (8) no one had offered him any inducement, forced him, or

threatened him to get him to plead guilty or sign the plea agreement.  (Doc. 81-2, at 17:21-20:3.)

I then confirmed that neither counsel knew of any reason I should not to accept Vanier's guilty

plea; found that Vanier was guilty as charged in Counts One and Two; indicated that I was

satisfied that Vanier knew his rights, including his right to go to trial; indicated I was satisfied

that Vanier was aware of the consequences of his plea, including the sentence that might be

imposed; and found that Vanier was knowingly and voluntarily pleading guilty.  (*Id*. at 23:17-

24:5.)  Indeed, Vanier does not dispute any of this.  (*See* Def.'s Supp. 10 ("There is no dispute

that Defendant's plea colloquy adhered to the standard script:  yes, he was not being threatened

or coerced; yes, he said guilty; yes, he was satisfied with his attorney's representation; yes, he

had reviewed the superseding information . . . ; and yes, he understood the rights he was giving

up by pleading guilty to the crimes charged."))  Vanier has not offered a fair and just reason—let

alone a substantial reason—to doubt his sworn statements during his guilty plea.  Therefore,

Vanier's motion to withdraw his guilty plea must be denied.  *See Hernandez*, 242 F.3d at 112 (a

court is "entitled to rely upon the defendant's sworn statements, made in open court . . ., that he

understood the consequences of his plea, had discussed the plea with his attorney, knew that he

could not withdraw the plea, [and] understood that he was waiving [certain rights]."); *Juncal*,

245 F.3d 166, 171 (2d Cir. 2001) (statements during plea allocution have "such a strong

presumption of accuracy that a district court does not, absent a substantial reason to find

otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to

whether a plea was knowingly and intelligently made").

Defense Counsel argues that Vanier's "plea was not knowing, and as such, not voluntary." (Def.'s Supp. 1.) Specifically, Defense Counsel puts forth a hodgepodge of arguments, many of which he concedes he is not claiming invalidate Vanier's guilty plea,[10] but he speculates that they "indicate to avoid life in prison—the big plea leverage here—any God-fearing human being would sign what they have to sign to avoid lifelong confinement." (Def.'s Supp. 12.) In other words, Defense Counsel is essentially arguing that I should infer that since his client was facing a maximum of life imprisonment, he would agree to anything to avoid a life sentence. I will not draw such an inference as this argument is meritless, and is not supported by the law or the facts. Vanier cannot satisfy his burden based on his counsel's speculation concerning what he might have been thinking during his guilty plea. *See Hernandez*, 242 F.3d at 112; *Juncal*, 245 F.3d at 171; *see also United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n.10 (11th Cir. 1987) (evidentiary hearing unnecessary on defendant's motion to withdraw guilty plea where comprehensive Rule 11 colloquy was conducted and defendant's sworn responses during colloquy refute defendant's "unexpressed reliance on his attorney's speculation"). Moreover, during the plea proceeding, Vanier did not express reservations about pleading guilty

---

[10] Here, Vanier also states that "[t]he record reveals, in two key areas, that [he] was merely going along with the plea deal his [second] attorney had advised him to go along with, without thought as to what he was saying or agreeing to beyond the hoopes [sic] through which he had to jump; of course, this is never a legal argument entertained by appellate courts, and has no merit in the scope of a motion to withdraw a plea." (Def.'s Supp. 11–12.) The first area Vanier identifies relates to his claim that he did not sign the waiver of indictment in open court. (*Id*. 12.) Vanier pled guilty in open court before me, a fact that is supported by the docket and transcript of the plea proceeding. As is customary with guilty pleas to a superseding information, the Government provided the waiver of indictment form to counsel to review with his client prior to me taking the bench. During the plea proceeding, the waiver of indictment—which is dated the same date of Vanier's guilty plea, December 16, 2019, (Doc. 30)—was shown to Vanier by my Deputy Clerk, and Vanier acknowledged that his signature appeared on the waiver of indictment. After asking questions to confirm that Vanier was knowingly and voluntarily waiving his right to be indicted by a grand jury, I informed the parties that "we'll take care of getting the waiver of indictment filed." (Doc. 38, at 3:6-7.) Similarly, Vanier also claims that he did not sign the plea agreement on the date of his guilty plea, (Def.'s Supp. 13), which is also a claim that is belied Vanier's own statements under oath as documented in the plea transcript, (Doc. 38, at 17:21-18:6). In any event, Vanier concedes neither of these "areas" are grounds for the withdrawal of his guilty plea. (*Id*. 12).

due the potential sentence he faced.  Indeed, giving credence to this argument would mean that

any defendant facing a maximum life sentence would meet the burden of stating a "fair and just"

reason for withdrawal of his guilty plea.

### 3.   Guideline Calculation for Count Two

Conspiracy to commit sex trafficking in violation of Section 1594(c), the offense of

conviction in Count Two, carries no mandatory minimum sentence, but has a maximum of life.

18 U.S.C. § 1594(c) ("Whoever conspires with another to violate section 1591 shall be fined

under this title, imprisoned for any term of years or for life, or both.").  The guideline for a

violation of Title 18, United States Code, Section 1594(c) is U.S.S.G. § 2X1.1.  The base offense

level is determined "from the guideline for the substantive offense, plus any adjustments from

such guideline for any intended offense conduct that can be established with reasonable

certainty."  U.S.S.G. § 2X1.1(a).  Vanier was charged with conspiring to violate Title 18, United

States Code, Sections 1591(a)(1) and (a)(2).  Sections 1591(b)(1) and 1591(b)(2) list the

potential punishment for violating Section 1591(a).  Although neither the Superseding

Information nor the plea agreement reference either penalty provision, the Superseding

Information alleges that Vanier participated in sex trafficking "knowing and in reckless disregard

of the fact that (1) means of force, threats of force, fraud, coercion, as described in Title 18,

United States Code, Section 1591(e)(2), and a combination of such means, would be used to

cause such persons to engage in one and more commercial sex acts, and (2) that one or much

[sic] such persons had not attained the age of 18, in violation of Title 18, United States Code,

Sections 1591(a)(1) and (a)(2)."  (Superseding Information ¶ 3.)  The penalties for substantive

sex trafficking offenses set forth by Section 1591(b)(1) are triggered if the defendant knew or

recklessly disregarded the fact that (a) force, fraud, or coercion, or any combination of such

means, would be used with respect to the person or (b) the person was under the age of fourteen.

Here, the allegations in the Superseding Information match the language in Section 1591(b)(1) related to force, fraud, or coercion, and Vanier allocuted to knowingly and recklessly disregarding the fact that a combination of fraud and threats would be used to cause girls to engage in sex for money.  Under these circumstances, I find that the fact that neither the Superseding Information nor plea agreement reference Section 1591(b)(1) does not impact the application of the Guidelines.  Where the force, fraud, or coercion conditions in Section 1591(b)(1) are satisfied, a substantive violation of Section 1591(a) results in a base offense level of 34.  U.S.S.G. § 2G1.3.[11]

## B.  *Motion for a Fatico Hearing*

During the April 28, 2021 conference, I indicated that I was trying to determine the contours of the disputed facts that Vanier intended to challenge during a *Fatico* hearing.  (Doc. 88, at 25:10-12.)  After indicating that the age of Minor Victim-2 might be a disputed fact, Defense Counsel generally referenced enhancements, and then stated, "I'll narrow down that issue specifically what enhancements the *Fatico* would challenge.  Because, clearly, there's no point in the *Fatico* if I'm not providing specific enhancements that are being challenged where the plea is insufficient as to Count Two."  (*Id.* at 32:7-11.)  Despite this representation, Vanier's supplemental submission does not specifically identify enhancements he is challenging; instead,

---

[11] The Ninth Circuit held in *United States v. Wei Lin*, 841 F.3d 823, 827 (9th Cir. 2016)—with reference to a similar version of the Guidelines section at issue here—that the base offense level of 34 only applies when a defendant is actually subject to §1591(b)(1)'s mandatory minimum 15-year sentence.  Neither the Second Circuit nor district courts in this circuit appear to have addressed this specific issue.  However, the Third and Eighth Circuits have rejected the Ninth Circuit's conclusion.  *See United States v. Sims*, 957 F.3d 362, 363–64 (3d Cir. 2020), *cert. denied*, 2020 WL 5883563 (U.S. 2020); *United States v. Carter*, 960 F.3d 1007, 1014 (8th Cir. 2020).  I agree with Third and the Eighth Circuits.  As the Third Circuit noted in *Sims*, application of the Ninth Circuit's decision would lead to "absurd results" by punishing far more leniently a defendant convicted under 1594(c) but who engaged in the same exact conduct as a defendant who was convicted of the substantive offense.  *See United States v. Sims*, 957 F.3d at 364.  However, neither party addresses *Wei Lin*, *Sims* or *Carter*; therefore, I direct that each party address these cases and how, if at all, they impact the Guidelines calculation in this case in their respective sentencing submissions.

he states in a heading on the last page of his submission that he seeks a *Fatico* hearing with regard to the enhancements sought by the government as to Count Two of the Superseding Information.  Vanier does not provide me or the Government with sufficient information to determine what the nature of the alleged factual disputes that would be addressed during a *Fatico* hearing; therefore, I deny his request for a hearing.

In any event, assuming Vanier seeks to challenge the Sentencing Guidelines enhancements on Count Two, a *Fatico* hearing is not necessary because each of the enhancements is supported by his allocution and the stipulations in the plea agreement. Specifically, Vanier admitted that he and others agreed to recruit, advertise, and use their mobile devices to facilitate girls—who had not yet reached the age of 18—to have sex for money, and that he took these acts knowing and in reckless disregard that fraud and threats would be used to cause the girls to engage in sex acts.  These facts are sufficient to warrant enhancements under Sections 2G1.3(b)(2)(B), 2G1.3(b)(3)(A), and 2G1.3(b)(4)(A) of the Guidelines.  Vanier also stipulated to each of these enhancements as part of his plea agreement.[12]  Vanier has known since his bail hearing that the Government alleged that he used violence and intimidation against girls in order to get them to engage in prostitution.  The Government also provided search warrant affidavits, among other things, during discovery that contained such allegations of coercion and violence against Minor Victim-2.  Therefore, the assertions in the Government's sentencing letter should not be a surprise.  In light of Vanier's guilty plea allocution, the stipulations in the plea agreement, and the disclosure by the Government of the coercion and violence Vanier used against Minor Victim-2, a *Fatico* hearing is not warranted.  Vanier is free

---

[12] I note that despite referencing the age of Minor Victim-2 as a possible area of factual dispute, as noted above, Vanier's base offense level is 34, without regard to the age of Minor Victim-2 in 2010 and 2011.

to rebut these issues at sentencing.  *See Slevin*, 106 F.3d at 1091.

**IV.**    <u>**Conclusion**</u>

For the reasons stated above, Vanier's motion to withdraw his guilty plea or in the alternative for a *Fatico* hearing is DENIED.  The Defense is directed to file its sentencing submission on or before February 1, 2022.  The Government is directed to file its sentencing submission on or before February 8, 2022.  The parties are directed to appear for sentencing on February 15, 2022 at 10 a.m.  In their sentencing submissions, the parties should address the cases *Wei Lin*, *Sims* or *Carter* and how, if at all, they impact the Guidelines calculation in this case in their respective sentencing submissions.

SO ORDERED.

Dated:    December 17, 2021
          New York, New York

Vernon S. Broderick